IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 17-00239-KD-B-1 |
| | ) |
| JACOB EARL WEBER, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Jacob Earl Weber's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (Doc. 38), accompanying letters in support (Docs. 41[1], 44), and the United States' response (Doc. 42). Upon consideration, and for the reasons set forth herein, the motion for compassionate release is **dismissed without prejudice**, the motion regarding conditions of confinement is **dismissed for lack of jurisdiction**, and the motion pursuant to the CARES Act is **denied**.

**I.   Background**

In October 2017, Defendant Jacob Earl Weber (Weber) was indicted for three counts related to possession and distribution of methamphetamine and possession of a firearm in furtherance of a drug trafficking offense. Weber pled guilty to Count Two charging possession with the intent to distribute at least 5 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)( b) and Count Three charging possession of a firearm in furtherance of a

---

[1] Document 41 is a letter in support from Charlotte Weber, Defendant Weber's mother. Ms. Weber expresses her concern for her son's health, emphasizing that he tested positive the first week of November 2020 and stating "he already has a very compromised immune system…" (Doc. 41 at 1). Ms. Weber also notes her son "has a home to come home to and a family that loves him." Her concerns overlap with Defendant Weber's concerns expressed in his motion and in his letter in support; each are discussed in turn *infra.*

drug trafficking crime in violation of 18 U.S.C. § 924(c). (Doc. 20 at 16 (plea agreement)). He was sentenced March 30, 2018. (Doc. 35). He was sentenced to total term of imprisonment of 84 months consisting of: a term of 24 months as to Count Two and 60 months as to Count Three to run consecutive to the sentence imposed for Count Two. (Doc. 35).

Weber is now 35 years old and is incarcerated at the Federal Correctional Institute, Memphis. (FCI Memphis). His estimated release date is December 26, 2023.

Weber moves this Court for early release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on extraordinary and compelling reasons. Specifically, Weber asserts he had methicillin-resistant Staphylococcus aureus (M.R.S.A.) and has been treated for staph[2] multiple times, he has asthma, and has been treated for Hepatitis C. (Doc. 38 at 2). Weber explains that his "immune system is weak and [he] catch[es] infections quickly." (Id.). He states he is afraid he will "catch the COVID-19 germ. It is tearing through the system." (Id.). Weber then supplemented his motion stating that he has been in quarantine since November 6, 2020 after testing positive for COVID-19. (Doc. 44 at 3). He also stated it "took [him] almost a week to get [his] asthma inhaler refilled." (Id.).

Weber does not identify a release plan. He does state "I know what I was doing was wrong and if you grant me this chance I promise any report you hear of me will be of good things only. All I want to do is be with my family and take care of my babies." (Doc. 44 at 3). And see (Doc. 38 at 2 ("I am truly sorry for being the menace I had been in the past. I have grown up greatly since all this has happened. I promise if I'm given another chance I can be a good productive citizen and finally be the father/son my children/mother deserve.")).

---

[2] Weber explains that prior to being arrested, he "had M.R.S.A. and almost lost my left leg. I was in metro when I got my last surgery 'skin graph.' Since then I have been treated for staff multiple times." "Methicillin-resistant Staphylococcus aureus (M.R.S.A.) infection is caused by a type of staph bacteria that's become resistant to many of the antibiotics used to treat ordinary staph infections." *MRSA infection*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336 (last visited December 3, 2020). The Court understands Weber's reference to "staff" to mean staphylococcus (staph).

**II.      Exhaustion**

Weber in part moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 38). In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that:

> (A) the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)…it finds that—
> (i)     extraordinary and compelling reasons which warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

As stated above, the Court may act on the motion only after Weber has exhausted his administrative rights to appeal the BOP's failure to file a motion for compassionate release, or if more than 30 days have passed since the Warden received Weber's request for compassionate release. Weber has not provided any evidence that he has complied with either of the two statutory prerequisites. Because of this, the United States asserts Weber failed to carry "his burden to demonstrate jurisdiction and his motion should be dismissed without prejudice." (Doc. 42 at 6). Therefore, the motion for compassionate release is dismissed without prejudice for failure to show compliance with either of the statutory prerequisites.

However, even if Weber had exhausted his administrative remedies, for the reasons discussed *infra* he would not be entitled to compassionate release on the grounds alleged.

**III.     Motion for Compassionate Release**

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th

Cir. 2010); United States v. Shaw, 711 Fed.Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed.Appx. 727, 729 (11th Cir. Feb. 25, 2020) (citing 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act was enacted, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

4

> (1) (A) Extraordinary and compelling reasons warrant the reduction;
> or . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[3]

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under § 3582(c)(1)(A): (A) Medical Conditions of the Defendant; (B) Age of the Defendant[4]; (C) Family Circumstances; and (D) Other Reasons. Weber asserts his M.R.S.A, Hepatitis C and asthma weaken his immune system and make him more susceptible to contracting COVID-19. (Doc. 38 at 2). Since Weber filed his initial motion, he filed a supplement letter indicating he contracted COVID-19. (Doc. 44 at 3). His "serious…medical condition[s]" of M.R.S.A., hepatitis C, asthma, and COVID-19 assuming that Weber could provide evidence that he currently has these conditions,[5] may qualify if certain criteria are met. U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I). Specifically, Weber would need to show that he is:

---

[3] Subparagraph (B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]"  Since Weber is 35 years old, subparagraph (B) cannot apply to him.

[4] Subparagraph (B) requires the defendant be at least 65 years old. As noted *supra*, footnote 3, Weber is 35 years old so this subparagraph does not apply to him.

[5] Weber does not provide any medical documentation. At sentencing, the Court was made aware of the surgery Weber described that almost resulted in the loss of his left leg as well as the skin graph that resulted from that surgery. (Doc. 28). At sentencing, Weber similarly reported that he suffered from acute asthma. (Id.). The United States does not contest Weber suffers from these conditions. (Doc. 42 at 6). In the United States' Response, the United States cites to Weber's motion in which he claims to have these conditions; the United States does not indicate it separately reviewed medical documentation to confirm these conditions though. (Doc. 42 at 6). Moreover, Weber supplemented his motion by letter in which he contends he tested positive for COVID-19 in the beginning of November. (Doc. 44 at 3). Weber filed this supplement after the United States filed its Response so the United States has not addressed this allegation.

> (I) suffering from a serious physical or medical condition,…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A)(ii)(I).[6]

Specifically, Weber asserts he has a weak immune system and he "catch[es] infections quickly." (Doc. 38 at 2). Weber does present evidence that M.R.S.A. weakens an individual's immune system or that it increases the risk of COVID-19 infection. See United States v. Chambers, 2020 WL 4260445, at *3 (E.D. La. July 24, 2020) ("There is no evidence that Bell's Palsy or MRSA causes an individual to be immunocompromised or that either otherwise increases the risk of COVID-19 infection."). Moreover, the Center for Disease Control and Prevention (CDC) does not recognize M.R.S.A. or staph as medical conditions which place an individual at higher risk of severe illness from COVID-19.  See e.g., *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 1, 2020) (emphasis added) (listing diseases which place individuals at greater risk for serious illness from COVID-19 but not mentioning M.R.S.A. or staph).

Second, Weber asserts he has asthma; he also notes that "it took [him] almost a week to get [his] asthma inhaler refilled." (Doc. 38 at 2; Doc. 44 at 3). According to the Centers for Disease Control and Prevention, "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. (Last visited December 3, 2020). Again, Weber indicated he suffered

---

[6] Weber does not allege that he has a terminal illness, that he has serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process. He does not allege that his family circumstances meet the criteria 1(A) or that he meets the age requirement in 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) & (ii)(II)(III), (B) & (C).

from acute asthma at the time of sentencing; he does not allege his asthma is now moderate or severe to place him in the high-risk category as identified by the CDC.

Third, as to Hepatitis C, Weber asserts he has "been treated for Hep-C" but he provides no medical documentation in support. (Doc. 38 at 2). Even assuming Weber has Hepatitis C, the CDC advises that "chronic liver disease…*might* increase your risk for severe illness from COVID-19. See *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 1, 2020) (emphasis added). Regarding Hepatitis C specifically, the CDC states, "[c]urrently, [as of May 5, 2020] we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Liver Disease*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last updated May 5, 2020). It further recognizes that Hepatitis C is a liver infection that may result in long-term, chronic infections affecting the liver. See *Viral Hepatitis: Hepatitis C Information*, Centers for Disease Control and Prevention (last reviewed July 28, 2020), https://www.cdc.gov/hepatitis/hcv/index.htm. As of 2018 when Weber was sentenced, he did not disclose that he had Hepatitis C. So, it appears Weber was recently diagnosed with Hepatitis C. Weber does not allege that he has suffered liver damage or other long-term medical issues associated with or resulting from Hepatitis C. See United States v. Roden, 2020 WL 3871168, at *3 (W.D. Va. July 9, 2020) (finding defendant in his forties, recently diagnosed with Hepatitis C, did not meet his burden of showing extraordinary and compelling reasons to justify his release); United States v. Hilliard, No. 17 CR 35-01 (VB), 2020 WL 3182778 (S.D.N.Y June 15, 2020) (denying a motion to release by a defendant who was forty years old with asymptomatic

hepatitis C but no other high-risk ailments); and United States v. Abeyta, 2020 WL 4593216, at *3 (D. Colo. Aug. 11, 2020) (denying compassionate release on the basis of Hepatitis C where there was no evidence before the court that the defendant was actually immunocompromised or had sustained liver damage).

Next, Weber contends he tested positive for COVID-19 around November 6, 2020 and that he has "been on quarantine ever since." (Doc. 44 at 3). Weber did not provide medical documentation to show a positive COVID-19 test. Importantly, Weber does not allege that he experienced any symptoms from COVID-19 nor does he provide evidence that his health is deteriorating since contracting COVID-19. See United States v. Johnsons, 2020 WL 6134668, at *2 (M.D. Fla. Oct. 19, 2020) ("Second, although the medical records establish that he contracted COVID-19, they reflect that he remained asymptomatic, had no complaints, and was clinically stable throughout the duration of the illness."); United States v. Roundtree, 2020 WL 5819541, at *4 (S.D. Fla. Sept. 30, 2020) (denying defendant's motion for compassionate release where he contracted COVID-19, remained asymptomatic, did not require hospitalization, was quarantined, and received regular medical examinations and tests); United States v. Walker, 2020 WL 5258287, at *3 (N.D. Ala. Sept. 3, 2020) (denying compassionate release to an inmate who contracted COVID-19 but failed to demonstrate that "he is at higher risk or would otherwise be better off were he released from incarceration now.").

And, Weber does not argue that any of these conditions diminish his ability to provide self-care while in prison.[7] Thus, Weber did not meet his burden of showing extraordinary and compelling reasons to justify his release.

---

[7] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identifies a "Debilitated Medical Condition" and states that reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if

Moreover, the Court may grant a reduction in sentence for early release only "after considering the [applicable] factors set forth 18 U.S.C. § 3553(a)." See 18 U.S.C. § 3582(c)(1)(A). In that regard, the United States asserts Weber's sentence "remains appropriate…That is particularly true given his criminal history." (Doc. 42 at 7). The United States notes: "From 2011 up to his arrest in June 2014, Weber has had multiple arrests, convictions and probation revocations related to drug use and distribution." (Doc. 42 at 7 (citing Doc. 35)). Additionally, the United States points out that Weber has not yet served even half of his sentence. (Id.). Thus, per the United States, the Court should deny Weber's motion "because his sentence remains fair, appropriate, and necessary to deter crime and protect the community."

In his motion, Weber apologizes "for being the menace I had been in the past." (Doc. 38 at 2). He states "I have grown up greatly since all of this has happened. I promise if I'm given another chance I can be a good productive citizen and finally be the father/son my children/mother deserve." (Id.). Weber also notes that since he was sentenced, he has "completed a drug class, a psychology class, gotten certified through N.C.C.E.R., and the N.C.C.E.R. Green Environment, drawing and airbrushing." (Id. at 1).

While the Court commends Weber's accomplishments in prison, the Court finds the factors set forth in Section 3553(a) do not warrant a reduction in sentence. The Court has considered the "nature and circumstances" of Weber's offense and finds that this factor does not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). Weber's "history and characteristics" also do not weigh in favor of a sentence reduced to time served. Here, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for

---

the inmate is: Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

9

the law, and to provide just punishment for the offense," or to adequately deter criminal conduct and "protect the public from further from the Defendant." 18 U.S.C. § 3553(a)(1); § 3553 (a)(2)(A), (B), & (C).

## IV.     Conditions of Confinement

Weber also takes issue with how officials at the FCI Memphis were conducting COVID-19 tests, about the use of personal protective equipment during COVID-19 testing, with the quarantine process at FCI Memphis, and with the accessibility to medical care, i.e. an inhaler. (Doc. 44 at 1-3). To the extent Weber's motion challenges the conditions of confinement at FCI Memphis, this claim properly lies in a civil rights action, not a habeas corpus action. See Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979) (holding that habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration)[8]; Keys v. Warden, FCC Coleman-Low, 2020 WL 3962233, at *2 (M.D. Fla. July 13, 2020) (noting habeas corpus action was an improper action for defendant's challenged to the conditions of his confinement); United States v. Williams, 2020 WL 3037075, *1 (W.D. La. June 5, 2020) (finding defendants generalized requests to change the pod defendant was assigned to should be raised in a Bivens action, not under 18 U.S.C. § 3582(c)(1)(A)).

Claims that concern conditions of a prisoner's confinement and do not relate to the legality of the inmate's confinement, nor challenge the fact or duration of confinement, are *Bivens* actions, not habeas actions. See Hill v. McDonough, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under §

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

1983.") (citations omitted). Thus, to the extent that Weber's claim could be construed as a civil rights claim against officials at FCI Memphis for violations of his constitutional rights, this Court lacks personal jurisdiction. Those claims must be brought in the district court in the district where the prison officials reside or are employed. See Cosby v. United States, 2009 WL 282 1943 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is improper.") (citations omitted). And, to the extent that this could be construed as a civil rights claim against the Bureau of Prisons, the Court lacks subject matter jurisdiction. Nalls v. Coleman Low Federal Inst., 307 Fed.Appx. 296, 298 (11th Cir. 2009) ("As an initial matter, the district court lacked subject matter jurisdiction over Nalls's claims against the Bureau of Prisons because Bivens does not extend to federal agencies"). Accordingly, this claim is dismissed for lack of jurisdiction.[9]

## V.     CARES Act

To the extent that Weber's motion could be construed as a motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, the motion is **DENIED**. See e.g., (Doc. 38 at 2 (writing "CARES Act" in motion but citing the Compassionate Release statute)).[10] Previously, under 18 U.S.C. § 3624(c)(2), the Bureau of Prisons had authority to "place a prisoner in home confinement for the

---

[9] Weber is not entitled to habeas relief for his cognizable compassionate release claims for the reasons discussed *supra*.

[10] "Courts are obligated to 'look behind the label' of pro se inmate filings to determine whether they are cognizable under 'a different remedial statutory framework.'" United States v. Brown, 748 Fed. Appx. 286, (Mem)–287 (11th Cir. 2019) (citing United States v. Jordan, 915 F.2d 622, 624-25 (11th Cir. 1990)).

shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to COVID-19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP. CARES Act, Pub. L. 116-136, § 12003(b)(2).[11]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 2 (April 3, 2020), https://www.justice.gov/file/1266661/download.

However, the CARES Act did not give the Court authority to direct the BOP to consider Weber for home confinement; it did not give the Court authority to direct the BOP to place him in home confinement for the remainder of his sentence. Under 18 U.S.C. § 3621(b), it is the BOP that "shall designate the place of the prisoner's confinement."

## VI. Conclusion

---

[11] "Home Confinement Authority. During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).

For the reasons stated herein, Weber's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 38) is **DISMISSED without prejudice.** To the extent Weber's motion could be construed as a challenge to the conditions of his confinement, his motion is **DISMISSED for lack of jurisdiction**. To the extent Weber's motion could be construed as a motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, the motion is **DENIED.**

**DONE** and **ORDERED** this **4th** day of **December 2020**.

                                              **s / Kristi K. DuBose**
                                              **KRISTI K. DuBOSE**
                                              **CHIEF UNITED STATES DISTRICT JUDGE**